## Knoll *versus* Light *et al.*

1. Plaintiff owned land above defendants' dam, which ordinarily did not back the water on plaintiff's land; in latter years a peculiar grass commenced growing in this dam about February of each year, which obstructed the water, and in consequence it flowed back on plaintiff's land; about June the grass broke off and ceased to impede the current. The court below charged that if accumulations of dirt, &c., in the dam caused the growth of the grass, the defendants would be liable as if the obstruction had been caused by dirt, &c., alone; but if the grass would have grown to the same extent and caused the same injury, &c., in the channel if there had been no dam or accumulation of dirt, &c., he would not be liable. *Held* to be correct.

2. If the growth of the grass was not occasioned by any act or negligence of the defendants, and was the result of natural causes over which he had no control, he would not be liable for injury therefrom to the plaintiff, although the obstruction was on the defendants' own land.

3. There is no liability for an injury arising from natural causes or an act of Providence, if there be no concurring negligence.

4. The plaintiff, if injured by the grass, had the right to enter upon defendant's land and remove it. Per PEARSON, P. J.

May 19th 1874.    Before AGNEW, C. J., SHARSWOOD, WILLIAMS, MERCUR and GORDON, JJ.

Error to the Court of Common Pleas of *Labanon county* : Of May Term 1873, No. 58.

This was an action on the case, commenced August 9th 1870, by Isaac Knoll against John Light, Henry Light and Cyrus Light, for nuisance in swelling water back on the plaintiff's land.

The cause was tried November 14th 1871, before Pearson, P. J.

The plaintiff owned a tract of land on the Quitapahilla creek in Lebanon county; below this tract, the defendants owned iron works; the pool of the dam of the works covered an area of between 30 and 40 acres; the dam is about a mile and a half in length, and the breast is a mile and three-quarters below the plaintiff's line. The dam was built one hundred years or more ago; the fall from the head of the dam to the breast is but 6½ feet. Eight or ten years before bringing this suit a peculiar kind of grass commenced growing in the dam, especially in the channel of the stream; the grass would appear about February and March in each year, attain its full growth sometime in the month of June, the stem break off at or near the roots and would shortly afterwards disappear. During the time of its existence the water would be obstructed and flow back on the plaintiff's land and injure his meadow. His allegation was that the grass grew in the dam by reason of dirt, &c., which the defendants permitted to accumulate in it: that if this were not so, still as the grass grew upon the defendants' land and obstructed the flow of the water to the injury of the plaintiff, it was the duty of the defendants to remove it.

The defendants alleged the growth of the grass was a natural

[Knoll v. Light.]

and spontaneous growth, not occasioned by an accumulation of dirt, &c., in the dam and did not arise from any neglect or omission of duty on their part; but that it was the act of God and therefore involved them in no responsibility as to keeping the channel clear from it.

The plaintiff and defendants both submitted points.

In answer to the points and in the general charge the court instructed the jury in substance, that if the obstruction to the flow of the water arose from the accumulation of dirt, &c., in the defendants' dam; or if the grass grew or was permitted to remain by any neglect of the defendants, they were liable; but if the growth was the result of natural causes, without any negligence on the part of the defendants, they were not liable.

The facts of the case, the points made by the parties, and the rulings in the court below, are stated in the opinion of the Supreme Court: no further statement of them is therefore deemed necessary.

The verdict was for the defendants, and the plaintiff took a writ of error assigning the rulings of the court below for errors.

*W. M. Derr* and *A. R. Boughter.*—A riparian owner is liable for injury from an overflow of water arising from the filling up of a dam, without regard to what produced the filling: Schuylkill Nav. Co. *v.* McDonough, 9 Casey 73; Addison on Torts 138, 157. An act of God is an inevitable accident without the intervention of man; something in opposition to act of man: Forward *v.* Pittard, 1 T. R. 33; Simmons *v.* Norton, 7 Bingham 639; Lehigh Bridge Co. *v.* Lehigh Coal & Nav. Co., 4 Rawle 9; Roush *v.* Walter, 10 Watts 87; Bacon *v.* Arthur, 4 Id. 440.

*J. Funck*, for defendants in error.—A riparian owner is not bound to keep the stream through his land clear from obstructions which do not come there through his fault: Kemmerer *v.* Edleman, 11 Harris 145. The upper owner has the right to enter on the land of the lower owner to remove injurious obstructions from the stream: Kauffman *v.* Griesemer, 2 Casey 413; Prescott *v.* Williams, 5 Metc. R. 425; Prescott *v.* White, 21 Pick. 341; Washburn on Easements 225, § 17.

Mr. Justice WILLIAMS delivered the opinion of the court, October 12th 1874.

A brief statement of the facts of this case and the substance of the charge may aid us in comprehending the precise questions presented by the record. The plaintiff is the owner of a farm on Quittapahilla creek, and, for the last ten or twelve years, about three acres of the meadows, bordering on the creek, have been overflowed from the month of March until the middle of June. The defendants are the owners of a forge and mills propelled by

[Knoll *v.* Light.]

water-power, situate on the creek a mile and three-quarters below
the plaintiff's land. The dam by which their water-power is sup-
plied was built about one hundred years ago, and, in ordinary stages
of the water, does not throw water back so as to flood the plain-
tiff's meadow. The pool formed by the dam is a mile and a half
long, with a fall of only six and a half feet in its entire length,
and covers an area of thirty or forty acres. Sometime about the
year 1862 a peculiar kind of grass began to grow in the pool and
along the channel of the creek, and has since continued to grow
every year. It springs up in February or March, grows rapidly to
the length of ten or twelve feet—coming to the surface of the water,
however deep it may be—and grows so close and thick as to obstruct
the flow of the water and swell it back upon the plaintiff's land.
It arrives at maturity in June, and then breaks off from the roots
and ceases to obstruct or impede the current. In 1863, the grass
growing in the pool was mowed by the property-owners along the
the creek, when the water directly fell to its former level; but
since that time it has not been cut, and during the season of its
growth the plaintiff's land has been more or less overflowed. The
evidence on both sides shows that the overflow was occasioned by
the grass growing in the pool; but whether its growth was caused
by deposits of dirt and debris which the defendants had allowed to
accumulate in the pool, or was the result of natural causes over
which they had no control, was a matter of dispute at the trial, in
regard to which the evidence was conflicting. The court charged
that "if the jury believe that the accumulations of dirt, filth and
debris in the dam cause the growth of this grass, the defendants
are responsible to the plaintiff for the injury to his meadow by the
backing of the water, in the same manner and to like extent as they
would be if the accumulations of dirt, &c., directly flowed back
the water. But if the grass would have grown to the same extent
and caused the same injury in the natural channel of the stream,
if there had been no dam, or no accumulation of dirt, then the de-
fendants are not responsible." * * * . "If the grass would have
grown in this channel so as to dam back the water and flood plain-
tiff's meadow, if no artificial impediment had been there, the de-
fendants are not responsible merely because the growth was on
their land. If there was no neglect of the pool, no improper
accumulation of dirt therein, which caused the growth of this vege-
table, although the same grows stronger and thicker in consequence
of the depth and stillness of the water, yet the defendants would
not be answerable therefor." * * * "The jury must bear in mind
that this dam was a lawful structure, for useful and proper pur-
poses, built on the parties' own land, and they are only answer-
able for injuries arising from their acts or neglect. If the im-
proper accumulation of dirt in the dam caused the growth of the
grass, the defendants must remove both, however expensive or diffi-

[Knoll *v.* Light.]

cult it may prove." * * *   "It is for the jury to consider whether this grass would have grown and choked up the stream if the dam had not been there.   If such would have been the case, the defendants can scarcely be considered culpable, unless the dirt increased its growth.   If the stream is choked by the spontaneous growth of this grass, we have no doubt of the plaintiff's right, and that of all other property-holders injured, to enter on the land of the defendants and remove the obstruction to the flow of the water and thus abate the nuisance." * * *   "It is for the jury to determine from the evidence whether the grass would have choked the stream independent of the dam." * * *   If you find a verdict in favor of the plaintiff, however small, it will oblige the defendants to remove the grass so as to prevent the flow of the water on the plaintiff's meadow.   This you must do regardless of consequences if you believe the defendants' negligence caused the growth of the grass. * * *   "The defendants will thenceforth be obliged to keep the dam clear of that impediment to the flow of the water, and thus the nuisance will be abated.   The duty to remove the grass, which is a spontaneous growth of nature, depends on whether it grows on account of any negligence of the defendants in permitting the dam to become dirty and impure from the accumulation of dirt and debris as already mentioned."   This is the substance of the instructions as given in the charge, and the answers to the points are in strict conformity therewith.   The jury were told, in answer to the plaintiff's second point, that, if in consequence of the accumulation of dirt in defendants' dam the grass grew to such an extent as to injure the plaintiff's meadow, it was the duty of the defendants to remove the grass from their dam so as to permit a free flow of the water, and for the failure to do so, he can recover damages to the extent of the injury sustained, unless the jury are satisfied that the grass would have grown and choked the stream if no dam had been there.   And in answer to the defendants' first point, they were told that for the injury resulting to the plaintiff from the grass growing in the dam and stream, the defendants are not responsible if the jury believe it resulted from natural causes, and was not produced directly or indirectly by the agency of the defendants.   Under these instructions the jury found that the growth of the grass was not caused by accumulations or deposits of dirt and debris in the pool, or by any act or default of the defendants, but was the result of natural causes, over which they had no control, and that it would have grown and obstructed the channel if there had been no dam there.   Why, then, should the defendants be liable for the injury resulting from the overflow occasioned by the grass?   If its growth was not caused by any act or negligence of the defendants, why should they be responsible if it choked up the stream and caused it to flow back on the plaintiff's land?   But it is contended that it is immaterial what caused

the growth of the grass, or whether it would have grown if there had been no dam. The question is not, say the plaintiff's counsel, would the grass grow in the stream if the dam was not there; but would the grass growing in the stream, if the dam was not there, obstruct the stream so as to swell the water back on the plaintiff's meadow? And they strenuously insist that this question should have been left to the jury, and that the court erred in not submitting it to their determination. The answer to this contention is twofold. In the first place the court was not asked to submit the question. It is not presented or suggested in any of the points upon which instructions were prayed for; and it is not error for the court to omit to charge upon any possible aspect of the facts, especially when uninvited by the party complaining: Kauffman *v.* Griesmer, 2 Casey 407. But in the second place the court did in fact submit the question to the jury when they were told that "if *the grass would have grown to the same extent and caused the same injury* in the natural channel of the stream, *if there had been no dam,* or no accumulation of dirt, then the defendants are not responsible." Again : "If the grass would have grown in this channel so as to dam back the water and flood plaintiff's meadow, *if no artificial impediment had been there,* the defendants are not responsible merely because the growth was on their land." And the court emphasized these instructions when it afterwards said : "It is for the jury to consider whether *this grass would have grown and choked up the stream if the dam had not been there.*" And still more pointedly : "It is for you to determine from all the evidence whether the grass would have choked the stream *independently of the dam.*" There is then no foundation for the complaint that the attention of the jury was not called to the question, whether the grass growing in the stream, if the dam was not there, would obstruct the stream so as to swell the water back on the plaintiff's meadow. This very question, in substance, was put to the jury and they answered it affirmatively. The reason is obvious. The testimony of all the witnesses, including that of the plaintiff himself, shows that the overflow was occasioned by the grass growing in the pool and channel of the stream. The fact that as soon as the grass comes to maturity, and breaks off from the roots, it no longer keeps the water back or impedes its flow, is conclusive that it was the grass *growing* in the pool that occasioned the overflow. If it was the dam that caused the grass to obstruct the stream, why did the overflow cease as soon as the grass was severed from the roots?

But it is further insisted that, under the evidence and the law of the case, the court should have given an unqualified answer to the plaintiff's third and fourth points. In the former, the court was asked to charge that if the jury believe that the grass growing in defendants' dam caused the overflow of plaintiff's meadow,

[Knoll *v.* Light.]

then the plaintiff can recover. And in the latter, that if the jury believe that the grass growing in the dam was the cause of the overflow of the plaintiff's meadow, and that the grass might, by mowing off the same, or by any other device, have been removed annually, even at great expense, and thus prevent the flooding of plaintiff's meadow, defendants were bound to do so, and, in default thereof, the plaintiff can recover to the extent of his injury. There is no suggestion in either of the points that the growth of the grass was occasioned by any negligence of the defendants, or that the overflow would not have occurred if it had not been for the dam. Both points assume that the grass growing in the pool of the dam was the cause of the overflow, and the duty of removing it, or paying for the injury which it occasioned, is predicated of the fact of its growing in the pool irrespective of the cause of its growth. But if its growth was not occasioned by any act or negligence of the defendants, if it was the result of natural causes over which they had no control, why should they be responsible for the injury which it occasioned, or why should it be their duty to remove it? If both parties were without fault, why should not the loss which it occasioned be borne by the plaintiff on whom it fell? It cannot be pretended that there is any liability at common law for an injury which happens exclusively from natural causes. If there is no concurring negligence, there can be no liability for a loss occasioned by an act of Providence: Bell *v.* McClintock, 9 Watts 119. But the defendants were guilty of no negligence if the grass grew without any fault on their part. If, then, the flooding of plaintiff's land was caused by the grass growing in the pool of defendants' dam, and if, as the jury have found, its growth was the result of natural causes, not superinduced by any act or negligence of theirs—if it would have grown and choked up the stream and forced the water back on plaintiff's meadow, if there had been no dam, the defendants are not responsible for the injury which it occasioned. This was the doctrine of the charge, and it was clearly right.

Judgment affirmed.